IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 27, 2004

**FRANK CHESTER BRIGHT, JR. v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**Case No. 97-A-597     J. Randall Wyatt, Jr., Judge**

_____

**No. M2003-00239-CCA-R3-PC - Filed May 18, 2004**

_____

A Davidson County jury convicted the Petitioner, Frank Chester Bright, Jr., of possession with intent to deliver over twenty-six grams of a substance containing cocaine, a Class B felony, and facilitation of possession of a deadly weapon, a Class A misdemeanor.  The trial court sentenced the Petitioner as a career offender to thirty years in prison on the possession count and eleven months and twenty-nine days in prison on the facilitation count, with the sentences to run concurrently.  On direct appeal, this Court affirmed the conviction, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal.  The Petitioner then filed a petition seeking post-conviction relief in the trial court, which the court dismissed.  On appeal, the Petitioner asserts that the post-conviction court erred when it dismissed his petition finding that there was no merit to his claims that: (1) he was denied effective assistance of counsel at his sentencing hearing; (2) the prosecutor committed prosecutorial misconduct at the sentencing hearing; and (3) the trial court's instructions to the jury violated his due process rights.  Finding no error, we affirm the post-conviction court's dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, joined.

Peter T. Skeie, Nashville, Tennessee, for the Appellant, Frank Chester Bright.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, District Attorney General; and John C. Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Factual Background**

This Court summarized the underlying facts of the Petitioner's case on direct appeal as follows:

The arrests of the defendant, Shawntava Shields, and Lisa Rice on October 1, 1996, were the result of an undercover operation carried out by Sergeant Greg Bunch of the Eighteenth Judicial District Task Force. In September 1996, Rice was in jail on an aggravated burglary charge. While in jail, Rice agreed to arrange a purchase of five ounces of cocaine for another female inmate whom she knew as Teresa. The plan was for Rice to arrange the sale through her supplier, once she was released from jail, and deliver the cocaine to Teresa's boyfriend, Chris. On October 1, 1996, Rice was released on Community Corrections, and that same day she was contacted by telephone by the person she thought was Chris. In fact, Sergeant Bunch had been informed by a confidential informant of the proposed sale, and it was Bunch, posing as "Chris," who made this and subsequent calls to Rice to arrange the drug sale. "Chris" promised to pay Rice $1,000 for setting up the deal. Rice paged the defendant to set up the sale. Her home phone number was entered in the beeper recovered from the defendant at the crime scene. Arrangements were made for the sale of five ounces of cocaine for $5,000. The defendant promised Rice an "eight-ball" of cocaine for making the contact. Once a location for the sale was established, Shields, the defendant's "sometimes" girlfriend, drove a Nissan Maxima to the agreed location, with the defendant in the front passenger seat and Rice in the back seat. On the way to the location, the defendant showed Rice five bags of cocaine and a gun, which he threatened to use if the deal turned out to be a setup.

The defendant, Shields, and Rice arrived at the agreed location shortly after Sergeant Bunch and parked close to his car. Rice got out of the back seat and approached Sergeant Bunch, who sent her back to the Maxima for the drugs before he was willing to hand over the money. Once she returned with the cocaine and handed it to Sergeant Bunch, other undercover police officers, who had been monitoring the situation from close by in three separate vehicles, moved in, with strobe lights and sirens activated, to block the Maxima. As these police vehicles blocked that of the suspects, Shields, who was operating the suspects' vehicle, rammed the vehicles in both her front and rear. The defendant then jumped from the passenger seat into Shields's lap and began operating the gear lever himself, ramming the police vehicles blocking his own. However, the defendant was unsuccessful in extricating the vehicle, and he and Shields were arrested. The pistol, found on the passenger seat where the defendant had been sitting, was fully loaded. Recovered were two bags of cocaine, one weighing 14.2 grams and the other weighing 9.4 grams, on the driver's seat of the Maxima; a bag of 2.7 grams of cocaine and a bag of 2.6 grams of marijuana on the defendant's person; and on Shields's person, twenty- one small bags of marijuana with a total weight of 19.2 grams and a marijuana joint laced with cocaine base.

Other evidence from the scene included the bag of cocaine Rice had given to Sergeant Bunch, which weighed 5.1 grams, and the defendant's wallet, containing

a driver's license in the name of "Mervyn Leo Jordan," the person the defendant claimed to be when he was arrested.

State v. Frank Chester Bright, Jr., No. 01C01-9807-CR-00291, 1999 WL 743604, at *1-2 (Tenn. Crim. App., at Nashville, Sept. 24, 1999), *perm. app. denied* (Tenn. Oct. 23, 2000) (footnotes omitted).

On direct appeal, this Court affirmed the convictions, and the Tennessee Supreme Court denied the Defendant's application for permission to appeal. The Petitioner filed a pro se petition for post-conviction relief. The post-conviction court appointed an attorney to represent the Petitioner, and the attorney filed an amended post-conviction petition. In this amended petition, the Petitioner asserted that his conviction "must be voided and a new trial ordered." After a hearing, the post-conviction court dismissed the petition, and the Petitioner filed a timely notice of appeal. On appeal, the Petitioner asserts that the post-conviction court erred when it dismissed his petition finding that there was no merit to the Petitioner's claims that: (1) he was denied effective assistance of counsel at his sentencing hearing when his trial counsel, Robert Turner ("Counsel"), failed to argue that the evidence showed that the Petitioner was not a career offender; (2) the prosecutor committed prosecutorial misconduct at the sentencing hearing; and (3) the trial court's instructions to the jury violated his due process rights.

The following evidence was presented at the post-conviction hearing. The Petitioner testified that Counsel "showed up . . . right around time for the first trial." He explained that the first trial ended with a hung jury and that he was retried a few weeks later. The Petitioner stated that both Counsel and Steven Wells were his lawyers at the first trial. He explained that while Wells was first-chair, both Counsel and Wells questioned witnesses. The Petitioner explained that, prior to the first trial, he met with one of the attorneys twice, once for about ten minutes and once for about five minutes, but that he did not speak with Counsel at all between the first and second trial. The Petitioner stated that the only time he met with Counsel following the first trial was on the day of the second trial in a back room of the court house. The Petitioner stated that both Counsel and Wells were involved in the second trial. The Petitioner explained that to his knowledge neither Counsel nor Wells interviewed either of the co-defendants or police officers involved in his arrest.

The Petitioner testified that he was charged with some serious charges as well as some lesser-included offenses. He stated that he never discussed with Counsel the possibility of seeking a conviction on one of the lesser-included offenses in order to avoid a conviction on the most serious charge of possession with intent to deliver. The Petitioner stated that he "didn't know anything about lesser-included offenses" and that, when he asked Counsel about lesser-included offenses, "[Counsel] said . . . don't worry about that" because they were trying to achieve a hung jury again in the second trial. The Petitioner testified that neither Counsel nor Wells ever told him that, if he was convicted of possession with intent to deliver, he could receive a thirty-year mandatory sentence. The Petitioner recounted that Counsel and Assistant District Attorney General John Zimmerman discussed, in open court, possible jail time if he was convicted of possession with intent to deliver. The Petitioner stated that Counsel asked for the lower end of the range, eight to fifteen years at forty-

five percent, and that General Zimmerman asked for the higher end of the range, twenty to thirty years at forty-five percent.

The Petitioner explained that, at that time, he did not understand enhancement and mitigating factors in sentencing and that no one explained these factors to him until after he was convicted. The Petitioner stated that, during the trial, he believed he would receive between eight and thirty years in prison at forty-five percent or less if he was convicted. The Petitioner testified that he would have considered trying to get an acquittal on the possession with intent to deliver charge by focusing the jury's attention on the facilitation of possession of a deadly weapon charge if Counsel had explained to him that he would receive a thirty-year sentence at sixty-five percent if convicted of possession with intent to deliver.

The Petitioner testified that, during jury deliberations, the jury came back into the courtroom during a recess and saw, in addition to the evidence used against him during the trial, a television and "other stuff" that was evidence in an unrelated trial. The Petitioner speculated that the jury was confused by the evidence from the other trial and mistakenly believed that he had other charges pending against him.

On cross-examination, the Petitioner reiterated that he did not understand lesser-included offenses and stated that the judge never instructed the jury in his first trial on lesser-included offenses because "it was all or nothing [at] the first trial." The Petitioner testified that the second trial was also "all or nothing" and that the judge never instructed on lesser-included offenses. The State then introduced into evidence copies of jury charges from both trials.

The Petitioner explained that he only understood what "Range I" meant but did not know that after multiple convictions his sentence would be enhanced. Further, the Petitioner testified that no other judge had ever explained to him that his convictions would be used to enhance future punishments.

The Petitioner stated that, before his first trial, Wells visited him twice and Counsel spoke to him on the telephone once. The Petitioner explained that, at the first trial, Wells was "the main lawyer" but that at the second trial Counsel was the lead attorney. The Petitioner stated that he did not have a problem with either attorney's representation during the first trial.

The Petitioner denied that he was caught with twenty-six grams of cocaine and that he tried to get away by smashing a police car. He admitted that he was in the vehicle but claimed that he "was in the passenger side" and that he never drove the vehicle. The Petitioner acknowledged that he knew he could be convicted of possession with intent to deliver and that he had a prior record. The Petitioner testified that he had multiple prior felonies, "about four, maybe, five. But not six." The Petitioner explained that he was not a "career criminal." The Petitioner stated that he was positive that he did not have six felony convictions, and that if the judgments from prior convictions indicated that he had six convictions, the judgments were wrong.

Counsel was called by the Petitioner. He stated that, initially, the Petitioner retained him and Wells as counsel, but that, subsequently, they were court-appointed. Counsel stated that he only had a portion of the Petitioner's file. Counsel explained that Wells was now living in Alaska and that he took some of the Petitioner's files when he left. Counsel stated that there were two trials, the first ended with a hung jury and the second ended with a conviction. Counsel explained that he only had a vague recollection of what happened at the two trials. Counsel stated that he and Wells filed a request for discovery, and the State responded to that request.

Counsel testified that, during plea negotiations, the State offered the Petitioner a sentence of "eighteen years, Range II, [consecutive to] the sentence he was [currently] serving, with an additional eight years concurrent with the eighteen years, Range II." Counsel then read a portion of Wells' notes that indicated that the State made a second offer to the Petitioner for "twenty years, at forty-five percent, Range III, consecutive [to the twelve years at thirty-percent which the Petitioner was currently serving], and then eight years concurrent [with the twenty years at forty-five percent]." Counsel testified that he met with the Petitioner and explained to him, with the aid of a sentencing matrix, "what he was looking at if he was convicted." Counsel stated that he went over the State's offer at that time, but the Petitioner "was not interested in . . . any type of plea. He was interested in beating the case." Counsel testified that, at the time he met with the Petitioner, he knew and understood that the Petitioner was facing a "career criminal type of sentence" if he was convicted, based on the Petitioner's prior record.

> I, specifically, recall [] having his record and having his Discovery from the state and using the sentencing matrix and showing him where . . . he fell on that. I don't, specifically, recall saying, [Petitioner,] you're a career offender, you fall over here or you're a persistent offender. I knew he had a very lengthy criminal record. And if he would have been a career offender at that time, I would have said, on this matrix, this [is] where you fall.

Counsel explained that, after discussing the Petitioner's possible sentence with him, the Petitioner's reaction was that he could beat the charges. Counsel stated that the Petitioner "wanted to go to trial and beat the case" and did not entertain the plea agreements that Counsel and Wells had negotiated for him.

Counsel testified that he spoke with the lead detective and other police officers involved in the Petitioner's case, but he could not recall whether he did so prior to the first or second trial. Counsel further stated that he could not recall whether he spoke with or interviewed Jose Ramirez. Counsel explained that, in preparation for the trial, he and Wells met with the Petitioner, filed a motion for discovery and reviewed the materials, held plea negotiations with the State, made a copy of the Preliminary Hearing transcript, and spoke with the lead detective and other police officers. Counsel testified that "there was a joint trial in the first trial, and then Lisa [Rice, a co-defendant,] pled, and maybe testified at the second trial." Counsel testified that he did not interview Rice before the second trial because she was represented by counsel.

Counsel explained that the theory of the case was that the Petitioner was simply with Lisa Rice at the time of the offense and that the drugs were not his. Counsel testified, "Lisa [Rice] was closer to [the drugs] than him. And based upon the facts . . . [the Petitioner] couldn't have known that the cocaine was in the car[,] but [Rice] would be the one that knew about it." Counsel explained that the Petitioner had distanced himself from Rice and "somehow or another, he just happened to be at the car at the time of the drug bust."

Counsel stated that he did not request a copy of the transcript from the first trial and he did not know whether Wells did. Counsel explained, "I [took] almost verbatim notes" during the first trial, and the two of them worked off those notes at the second trial. Counsel acknowledged that they did not ask for a continuance in order to get a copy of the transcript from the first trial.

Counsel testified that he could not recall whether Shields, the other co-defendant, pled guilty before the second trial. He explained that he did not remember when he found out that Rice was going to testify against the Petitioner at the second trial, but "it seems like it may have been a surprise . . . ." Counsel explained that they did not request a continuance because they were prepared to try the case and had just tried it two weeks before. Counsel stated that he had no recollection as to Shields' testimony at the first trial and that he had no recollection of interviewing her.

Counsel testified that he and Wells discussed the strategy of achieving a conviction on a lesser-included offense in exchange for an acquittal on the possession charge, but "it was an all or nothing thing" in the Petitioner's mind. Counsel explained, "[H]e wasn't interested in doing any lesser included offenses. Otherwise, we would have done that." Counsel stated that, "I have no doubt that he knew what he was facing, because I went over it with him, and Mr. Wells went over it with him. And I think that there was one occasion that we both sat down and went over it with him." Counsel explained that the Petitioner knew "a lot more than the average client" because he spent time in the prison law library figuring out what his legal situation was and "how to get out of it."

Counsel testified that, after the Petitioner was convicted at the second trial, Wells handled the case from the conviction through the sentencing hearing. Counsel stated that he had no recollection of preparing for the sentencing hearing. Counsel indicated that the sentencing hearing transcript indicated that Wells was the only one who spoke to the Court.

On cross-examination, Counsel testified that Lisa Rice got her drug "samples" from the Petitioner. Further, Counsel acknowledged that the Petitioner knew of the possible outcomes of the trial, but he was only interested in beating the charges. Counsel explained that, after the first trial, he went to the Petitioner with a plea offer from the State. He stated that he met with the Petitioner and "he wasn't interested in pleading to anything." Counsel stated that either he or Wells discussed each plea offer with the Petitioner, but the Petitioner was unwilling to agree to any of the offers. Counsel explained that, if the Petitioner had agreed to a plea offer, he would have "jumped" at the opportunity because the offer was the same as what they hoped would be the outcome at the trial.

Counsel testified that, if the Petitioner was a career offender and was convicted of the possession with intent to deliver charge, the only possible sentence was thirty years at sixty percent. He also agreed that the sentence was not probatable. Counsel stated that, "not only did I think [the Petitioner] understood [the possible sentences], but he had questions about it. And we were . . . looking at the different possibility on the [sentencing matrix], like kind of playing checkers, discussing them." However, Counsel explained that, after consulting with the Petitioner, the Petitioner refused the plea offers and the strategy was to beat the charges.

The Petitioner next called General Zimmerman. General Zimmerman testified that he has practiced law since 1974 and has been a prosecutor since 1981. The Court took judicial notice that in the time General Zimmerman has been a prosecutor, "he's participated in a number of cases." The general stated that, in preparing for a sentencing hearing, he would sometimes read the presentence report. He explained, "Usually I'm looking for the defendant's statement since I know what the case is about. All I'm really interested in is what the defendant said and whether or not . . . the Presentence Report writer made any comments about the defendant's . . . drug usage or when he last used drugs." He explained that there is a statutory requirement that a presentence report be introduced as an exhibit at a sentencing hearing. The Court took judicial notice that the presentence reports are official documents prepared by probation officers who work for the State in the Probation Department. General Zimmerman stated that the documents should be completed as accurately as possible but that "[probation officers] make mistakes . . . they're only human."

General Zimmerman testified that he did not use the presentence report when he made his recommendation to the judge. He admitted that he read the report but explained that he did not use it because he is "merely interested in what the defendant told the writer of the Presentence Report." He stated that he wanted to see if the Petitioner's statements to the writer of the presentence report were self-serving or contained an admission. General Zimmerman explained that the presentence report contained the Petitioner's statement and criminal history. General Zimmerman stated that he did not know how the presentence reports were prepared.

General Zimmerman identified the Petitioner's "record card." He explained that the record card was an internal document prepared by secretaries in the District Attorney's Office by "deciphering" the information "as best they can . . . from the covers of our blue files after a case is disposed." He further explained that the record cards prepared by the District Attorney's Office are not official records. General Zimmerman conceded that record cards are business records, but "they're only [as] reliable as the Assistant D.A. who writes on the blue file and the secretary [who] properly takes that from the blue file." General Zimmerman stated that the record cards are used by prosecutors to find out whether a defendant has prior convictions and, if so, what the convictions are.

On cross-examination, General Zimmerman admitted that he had no independent recollection of the Petitioner's case. He stated that:

> [I]f someone is going to be sentenced in a range above the Standard Range I, then it's
> our duty to go get certified copies of the conviction, judgments of convictions and the

indictments if the judgments do not reflect the date of the offense. And that's what we rely upon, what the actual official records of the Court are.

He then explained that the documents relied upon are obtained from the clerk's office, not the internal records of the district attorney's office. On re-direct, General Zimmerman stated that he had no recollection of having read the presentence report prior to the post-conviction hearing. He explained, "I do know, based on our D.A. records, I went and found the [Petitioner's] convictions to show Judge Wyatt. We filed a Notice of Sentence Enhancement that he was a career criminal. That was based on the certified copies of the judgment of convictions."

Following the presentation of the evidence, the post-conviction court found that the Petitioner was not denied effective assistance of counsel and dismissed the petition. The court stated:

Based on the testimony and exhibits presented at the hearing and the entire record of both trials, the Court finds that [Counsel's] representation of the Petitioner was competent and thorough. The Court does not find that the Petitioner has presented sufficient evidence to establish that his trial counsel's representation at either trial was deficient or prejudicial. For these reasons the Court must reject the Petitioner's ineffective assistance of counsel claim.

The Court also finds that the jury instructions given were proper and supported by the record. The Court notes that the Tennessee [Court of Criminal Appeals] found that the Petitioner was sentenced appropriately by the Trial Court. The Court, therefore, is of the opinion that the Petitioner's claim that the jury instructions were improper, is without merit.

The Petitioner's final argument is that the prosecuting attorney, John Zimmerman, committed prosecutorial misconduct by arguing that the Petitioner was a career offender, even though he knew that the Petitioner was not a career offender. The Petitioner, however, has failed to present any evidence that Assistant District Attorney Zimmerman intentionally mislead the Court. The Court is of the opinion that attorney Zimmerman prosecuted the case in an ethical and competent manner.

## II. Analysis

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203 (1997).[1] The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997).

---

[1] We note that the 2003 amendment to the Post Conviction Procedure Act, Public Acts 1995, chapter 207, section 1, changed the numbering of the general provisions part of the chapter to Tennessee Code Annotated section 40-30-101, *et seq.*

A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457.

On appeal, the Petitioner alleges that the post-conviction court erred when it dismissed his petition for post-conviction relief. Specifically, he asserts that the post-conviction court erred when it found there was no merit to the Petitioner's claims that: (1) he was denied effective assistance of counsel at his sentencing hearing when Counsel failed to argue that the proof showed that he was not a career offender; (2) the prosecutor committed prosecutorial misconduct at the sentencing hearing; and (3) the trial court's jury instructions violated the Petitioner's right to due process.

### A. Ineffective Assistance of Counsel

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. State v. White, 114 S.W.3d 469, 475 (Tenn. 2003); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to a de novo review. Id.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result, id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have

been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

In the case under submission, the Petitioner alleges that he was denied effective assistance of counsel at his sentencing hearing when Steven Wells[2] failed to argue that the presentence report and other evidence showed that the Petitioner was a persistent offender and not a career offender. The Petitioner argues that the primary issue at his sentencing hearing was whether he was a "career offender" or a "persistent offender." A career offender is defined by Tennessee Code Annotated section 40-35-108 (2003) as being "a defendant who has received: (1) Any combination of six (6) or more Class A, B or C prior felony convictions, and the defendant's conviction offense is a Class A, B or C felony." The State has the burden of proving that a defendant is a career offender beyond a reasonable doubt. Tenn. Code Ann. § 40-35-108(c). A "persistent offender" is defined by Tennessee Code Annotated section 40-35-107 (2003) as being "a defendant who has received: (1) Any combination of five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes, where applicable."

The Petitioner acknowledges that the State met its burden of proof of showing he is a career offender by "introducing certified copies of court documents that recorded all six prior felonies as [Class] C felonies," but argues that Wells was ineffective for not contesting this evidence because "the State's presentence report contradicted the State's allegation that [the Petitioner] was a career [offender]." The Petitioner alleges that instead of arguing that the Petitioner was not a career offender, Wells asked the Court for leniency which it could not give. The Petitioner contends that the State provided Wells with ample evidence to raise reasonable doubt at the sentencing hearing in the form of the presentence report that allegedly showed he was a persistent offender. The Petitioner alleges that Wells failed to adequately review the contents of either the presentence report or the record card, and that this failure falls below the range of competence demanded of attorneys in criminal cases. The Petitioner maintains that this failure "had an adverse effect on his defense" because, had Wells raised this issue at the sentencing hearing, it would have created a reasonable doubt as to whether the Petitioner was a career offender. The State asserts that this issue is waived because the Petitioner failed to include a transcript of the sentencing hearing in the record on appeal. However, on June 11, 2003, upon motion by the Petitioner to supplement the record, this Court ordered that it will take judicial notice of the direct appellate record, which includes a sentencing hearing transcript. Therefore, we will decide this issue on its merits.

After thoroughly reviewing the sentencing hearing transcript and the appellate record, we conclude that the Petitioner was not denied effective assistance of counsel at his sentencing hearing. At the sentencing hearing, the State introduced certified copies of six judgments for convictions of burglary in the second degree, a Class C felony. Wells argued to the trial court that the Petitioner had a serious drug problem and "a lot of the offenses that he's committed have been to support his habit." Wells told the trial court, "Your Honor, I don't think that . . . thirty years, simply because

---

[2]Counsel did not represent the Petitioner at the sentencing hearing and testified that he did not recall preparing for the sentencing hearing.

he's addicted to drugs, is right. . . . I would ask that, . . . in the discretion of this Court, that you would find that . . . it's, perhaps, better to address the problem, rather than just putting him away." The presentence report and the district attorney's office record card indicate that the Petitioner was convicted of burglary in the second degree five times and burglary one time; however, those documents are incorrect. For case number IF-5624, the certified copy of the judgment clearly states that the Petitioner pled guilty to burglary in the second degree on May 18, 1989, while the presentence report states that the Petitioner was convicted of "burglary–other than habitation," and the record card states he was convicted of burglary.

"The original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is *prima facie* evidence that the defendant named therein is the same as the defendant before the court, and is *prima facie* evidence of the facts set out therein." Tenn. Code Ann. § 40-35-202(a) (2003). The certified copies of the judgments were sufficient to prove beyond a reasonable doubt that the Petitioner was a career offender pursuant to Tennessee Code Annotated section 40-35-108, and the discrepancies in the presentence report and the record card would not have raised a reasonable doubt as to the Petitioner's status as a career offender. Once the trial court found that the Petitioner was a career offender, it had no discretion in sentencing the Petitioner. Moreover, the Petitioner did not call Wells, his lawyer at the sentencing hearing, to testify at the post-conviction hearing, and Counsel testified that he had no recollection of preparing for the sentencing hearing. Without any testimony from Wells, we are unable to ascertain what he did to prepare for the sentencing hearing or why he chose not to challenge the State's *prima facie* evidence of the Petitioner's six prior convictions. Therefore, under the circumstances, we conclude that Wells was not ineffective for not challenging the certified copies of the judgments. Furthermore, we conclude that the Petitioner failed to present any proof that Wells' representation of the Petitioner at the sentencing hearing fell below an objective standard of reasonableness and was not within the range of competence demanded of attorneys in criminal cases. Accordingly, we conclude that the Petitioner was not denied effective assistance of counsel at his sentencing hearing.

### B. Prosecutorial Misconduct

The Petitioner next alleges that the post-conviction court erred when it found that his claim of prosecutorial misconduct was without merit. The Petitioner asserts that General Zimmerman committed prosecutorial misconduct at the Petitioner's sentencing hearing by "never inform[ing] him or the court that the presentence report [General Zimmerman] submitted to the Court contained evidence that called for a lesser sentence than the career [offender] sentence [General] Zimmerman wanted the court to impose." Further, the Petitioner contends that General Zimmerman certified that the presentence report was factually accurate to the best of his knowledge when he submitted it to the Court at the sentencing hearing. The Petitioner argues that General Zimmerman must be deemed to have known about the "inaccuracies" between the presentence report and the judgments obtained from the clerk's office. The Petitioner contends that an attorney "must be deemed to have known about the exonerating content of the presentence report," and, regardless of whether it was knowingly or inadvertently, General Zimmerman committed prosecutorial misconduct.

While the post-conviction court addressed this issue on the merits, we conclude that this issue was waived because the Petitioner failed to bring this issue on direct appeal. Tennessee Code Annotated section 40-30-206(g) (1997) provides that:

A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:

(1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or

(2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

The Petitioner's ground for relief that the assistant district attorney committed prosecutorial misconduct should have been brought on direct appeal, and this claim for relief is not "based upon a constitutional right not recognized as existing at the time of trial." Also, the Petitioner's failure to present this claim on direct appeal was not "the result of state action in violation of the federal or state constitution." Accordingly, we conclude that the Petitioner has waived this issue.

### C. Jury Instructions

Lastly, the Petitioner alleges that the post-conviction court erred when it dismissed his post-conviction petition finding that the trial court did not violate his due process rights when it instructed the jury of his possible sentence if convicted of possession. The State submits that the trial court's jury instructions were not erroneous and that, even if the jury instructions were incorrect, the Petitioner failed to show that it affected the jury's verdict of guilt.

At the time of the Petitioner's second jury trial, the trial court was required to instruct the jury on the range of punishment for the charged offense as well as lesser-included offenses if requested to do so by either party.[3] See Tenn. Code Ann. § 40-35-201(d)(1) (1997 & Supp. 1998). The Tennessee Supreme Court ruled that Tennessee Code Annotate section 40-35-201(b) gave a defendant a "claimable statutory right to have the jury know the range of punishment applicable to the charges before deciding guilt or innocence," and rejected the argument that this raised a

---

[3]Tennessee Code Annotated section 40-35-201(b)(1) (1997) provided that for all non-capital cases, if requested, the trial court "shall charge the possible penalties for the offense charged and all lesser included offenses." This instruction "shall include an approximate calculation of the minimum number of years a person sentenced to imprisonment . . . must serve before reaching such person's earliest release date." Tenn. Code Ann. § 40-35-201(b)(2)(A)(i). Since the trial sub judice, this provision has been repealed so that for all non-capital criminal trials subsequent to May 19, 1998, "the judge shall not instruct the jury, nor shall the attorneys be permitted to comment at any time to the jury, on possible penalties for the offense charged nor all lesser included offenses." Tenn. Code Ann. § 40-35-201(b) (2003).

constitutional error.  State v. Cook, 816 S.W.2d 322, 326 (Tenn. 1991) (emphasis added).  Because the right to have the jury know the range of punishment applicable to the charges before deciding guilt or innocence is a statutory right and not a constitutional one, the Petitioner should have raised this issue on direct appeal.

A post-conviction court shall dismiss claims which have been waived.  Tenn. Code Ann. § 40-30-206(g) (1997).  "A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," with certain exceptions not applicable in the present case.  Tenn. Code Ann. § 40-30-206(g).

We conclude that the issue regarding the trial court's instructions to the jury of the Petitioner's possible sentence if convicted is dismissed because it is not based on a constitutional right and it was not raised in the Petitioner's direct appeal of his conviction.  See Cook, 816 S.W.2d at 326.  Because the issue should have been raised on direct appeal, and because it is a statutory right and not a constitutional one, the issue is waived in this post-conviction proceeding pursuant to Tennessee Code Annotated section 40-30-206(g).  Accordingly, we conclude that the Petitioner is not entitled to post-conviction relief on this issue.

### III.  Conclusion

In accordance with the foregoing reasoning and authorities, we AFFIRM the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

-13-